GEORGIA K. MCMILLEN, #6422
P.O. Box 1512
Wailuku Maui, Hawai'i 96793
Telephone: (808) 242-4343
Facsimile: (808) 242-4343
Email: gmcmillen@earthlink.net

Attorney for Defendant Michael Trent Barnes

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CR 03-00502  SOM |
| Vs | ) | |
| | ) | Defendant's Memorandum in |
| MICHAEL TRENT BARNES, | ) | Support of Motion to Unseal; |
| | ) | Certificate of Service. |
| Defendant. | ) | |

1

<u>Defendant's Memorandum in Support of Motion to Unseal.</u>

**I.    Background.**

On May 20, 2004, the defendant-appellant Michael Trent Barnes (Mr. Barnes or appellant) pled guilty to Counts 1 and 3 of the three-count Superseding Indictment: Cultivating More than 1,000 Marijuana Plant, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); Criminal Forfeiture, under 21 U.S.C. § 853.   On June 30, 2005, the United States District Court Hawai'i (District Court or Court) sentenced Mr. Barnes, which punishment included 57 months imprisonment and three (3) years supervised release. On July 15, 2005, Mr. Barnes filed a Notice of Appeal.  This matter is now on appeal to the United States Court of Appeals for the Ninth Circuit (the Ninth Circuit) under the Court of Appeals number 05-10577.  Mr. Barnes is currently incarcerated at the FCI Sheridan Federal Correctional Institution, located in Sheridan, Oregon.  His projected date of release from custody is July 1, 2008, according to the Federal Bureau of Prisons website.

In pursuit of the appeal in the Ninth Circuit, Mr. Barnes filed the Transcript Designation and Ordering Form on July 3, 2006.  Under the Ninth Circuit's scheduling order for perfecting the appeal, the court reporters' transcripts are to be filed on or before September 13, 2006.  Mr. Barnes'

Opening Brief and Excerpts of Record are due on or before October 23,

2006. After filing the Transcript Designation and Ordering Form, the

undersigned appellate counsel learned from the court reporter that the Court

had sealed a portion of the pre-trial proceedings on May 18, 2004, thus

requiring a Court order to produce a copy of the sealed transcript.

Therefore, on August 21, 2006, Mr. Barnes filed this motion to unseal

supported by a Declaration of Counsel.  On the same date, the Court directed

the undersigned counsel to filed a Memorandum in Support of the Motion to

Unseal, with a copy to be served upon Pamela O'Leary Tower, counsel to

Reverend Roger Christie, in addition to the plaintiff United States of

America (the Government).

## II.    Statement of Facts.

Mr. Barnes' defense to the Superseding Indictment was that his

religion, identified as the Religion of Jesus Church, and as the THC Ministry

[TR 01/04/04, 3][1], required the use marijuana as a part of his religious

practices. [Id. 5-6].  The Government filed a motion in limine to exclude

evidence at trial concerning Mr. Barnes' religious beliefs.   The hearing on

---

[1] "TR..." refers to the transcript for the proceeding on the date indicated, followed
by the page number from the transcript.

the Government's motion commenced on May 14, 2004. At that time the

Courts rejected, inter alia, Mr. Barnes' nonreligious challenges based on the

Commerce Clause and the Equal Protection Clause. [TR 5/14/04, 8-9; 9-10].

Otherwise, Mr. Barnes' claimed that the Controlled Substances Act

under which the Government indicted him violated his free exercise of

religion under the Religious Freedom Restoration Act. [Id., 11]. The Court

ruled that Mr. Barnes had to show:

> "[A]n exercise of religion, which may or may not involve a system of
> religious belief, but the primary thing is you need a religion. A mere
> belief is clearly not enough. This was made clear by the Tenth Circuit
> in U.S.A. v. Meyers, 95 F.3d 1475. At pages 1479 to 1480 the Tenth
> Circuit said that the defendant might have a sincere belief that
> possession and distribution of marijuana were for the good of
> mankind and the good of Planet Earth, but those beliefs did not
> constitute a religion for purposes of RFRA."

[Id. 14]. The burden was on the defense to show that Mr. Barnes was

exercising beliefs that were beliefs of a religion; only then would the Court

look to see if the Government met the burden of showing a compelling

interest in burdening the religion and whether it used the least restrictive

means. [Id., 12, 16].

Mr. Barnes' legal counsel at the time, Michael Glenn, told the Court

that he would call on both Mr. Barnes and Reverend Roger Christie (Rev.

Christie), "the licensed reverend who ordained Reverend Barnes." [Id., 18].

"[T]hey're the reverends of the church that's at issue; so they'll be the only

ones capable of testifying as to the factual basis for their church." [Id., 18].

At that time, Attorney Glenn identified Mr. Barnes' religions as the Religion

of Jesus Church and the Hawai'i Cannabis Ministry [Id., 19], both of which

were deemed to be separate religions [Id., 23] and both of which

"mandate[d] the cannabis sacrament consumption." [Id. 22]. Attorney

Glenn sought from Rev. Christie laywitness testimony [id. 27] regarding the

founding of the religions, and testimony regarding each religions' tenets.

[Id., 29].

The Court continued the hearing to May 18, 2004, to, "determine

whether there is some religion that the defendant is claiming to belong to

and whether that religion has as one of its precepts cultivating or possessing

with intent to distribute marijuana." [Id., 55].

At the continued hearing on May 18, 2004, Mr. Barnes' first witness

was Rev. Christie. After learning that Rev. Christie and Mr. Barnes were

both represented by the same legal counsel, Attorney Glenn, the Court

advised Rev. Christie of the conflict-of-interest inherit in Attorney Glenn's

dual representation. [TR 5/18/04, 8]. Attorney Glenn had written waivers of

conflict-of-interest from both Rev. Christie and Mr. Barnes. [Id., 10]. The

Court nonetheless decided not to proceed unless Rev. Christie had

independent counsel. [Id., 12]. Attorney Glenn responded:

> "Your Honor, Reverend Christie has independent counsel and he has
> counseled with his independent counsel, specifically regarding both
> his Fifth Amendment rights and his conflict rights.  He's thoroughly
> 120 percent prepared to testify today.  He appreciates your concern,
> but he has signed a conflict, it is in writing, he has waived conflict,
> and he has indeed sought the advice and obtained the advice of
> independent counsel."

[Id.,12].  Rev. Christie identified his independent counsel as Steven Strauss

of Hilo. [Id., 13].

The Court demanded that independent counsel, either Mr. Strauss via

telephonic connection or a court-appointed attorney, counsel Rev. Christie

about his rights. [Id., 16].  At this point, Rev. Christie decided to seek a

court-appointed counsel, "if that's the court's wishes." [Id., 16].

Shortly thereafter attorney Pamela O'Leary Tower entered the

courtroom and agreed to act as Rev. Christie's counsel. [Id., 17-19].  The

Court apprised Attorney Tower of the nature and status of case, the

Government's motion in limine and Rev. Christie's status. [Id., 17-21].  The

Court provided Attorney Tower with the case file; she appears to have

stepped outside the courtroom for 16 minutes to review the same. [Id., 21].

When she returned, the Court sua sponte cleared the courtroom and sealed

the hearing, on the ground that "counsel for the witness has some matters

she wants to raise with me that are in the nature of the confidential

discussions."  [Id., 21-22].

Attorney Glenn objected to being precluded on the ground that it violated Mr. Barnes' right to confront the witness. [Id., 22]. Notwithstanding, the Court sealed and vacated the courtroom, with the transcription of the sealing hearing under separate cover.  [Id., 22].

Back on the record, the Court explained:

"While we were on the record but in a sealed hearing, I met with the witness, Reverend Christie, and his court-appointed attorney, Pamela O'Leary Tower, only for the purpose of making sure that he understood his rights, he understood the consequences of waiving those rights, and then determining what it was he chose to do.  We did not discuss the substance of the factual matters that he would testify to, if he did proceed to testify.
        Now, let me have him state whether having received the advice of his attorney, Miss Tower, and having discussed that advice with Miss Tower and me what his intention is with respect to testifying in this hearing.
Reverend Christie, could you let everyone know.

THE WITNESS: Yes, thank you.  Your Honor, on the advice of counsel and prayerful consideration of my rights in this matter, I choose not to testify.  Thank you."

[Id., 23].  The Court excused Rev. Christie. [Id., 23].  Mr. Barnes went on to testify on his own behalf in opposition to the Government's motion in limine to exclude evidence at trial concerning his religious beliefs.

The Court relied a Tenth Circuit case, United States v. Meyers, 95 F.3d 1475 (10th Cir. 1996), to determine whether or not there was a religion. The Court found that Mr. Barnes' testimony neither established that he was a

member of a religion, nor acting pursuant to that religion, but rather that his activities were governed by his personal beliefs. [Id., 198]. Therefore, the Court concluded, inter alia, that he was not entitled to raise his purported religion as a defense to the charges against him; but even if he could have raised the issue and established a right based on proving that he was exercising a religious belief, the Government could show a compelling state interest. [Id., 198-200].[2] As a result of this ruling, most of Mr. Barnes' exhibits were rendered irrelevant. [Id., 213-14].

As trial commenced on May 20, 2004, the parties notified the Court that Mr. Barnes sought to enter a guilty plea to Counts 1 and 3 of the Superseding Indictment. [TR 5/20/2006, 2-3]. Attorney Glenn stated the motivation for the change of plea:

> "And the motivating fact, if you will, for this is that Reverend Barnes main cause of action – and I'm sure you've sensed this – is his rallying against the injustice of cannabis laws. And he was hoping at his trial he could prove what he's known all along: that the federal government has zero compelling interest in prohibiting cannabis. But he now knows that that has almost been taken from him."

[Id., 3-4].

---

[2] The Court permitted mentioning of religion with respect to the intent element of Count 2 of the Superseding Indictment, Possession with Intent to Distribute. [Id., 214].

**III.    Argument.**

    **A.    The Court Should Grant the Motion to Unseal in Order That Mr. Barnes May Pursue His Right to Direct Appeal, Which Necessarily Includes Review of the Entire Record of the District Court.**

An issue has arisen concerning whether or not the Court should lift the sealed portion of the hearing on May 18, 2004, for review and possible use in Mr. Barnes' direct appeal.  The purpose of Mr. Barnes' appeal is a review by the Ninth Circuit of the District Court's proceedings to see that the same were carried out according to law.

Mr. Barnes acknowledges that he and the Government entered a Plea Agreement on May 20, 2004, in which agreement he appears to have waived his right to appeal except in limited circumstances: for ineffective assistance of counsel; and if the Court imposed an upward department in sentencing from the United States Sentencing Guidelines' range deemed applicable. [Id., 30-31].  However, with the Opening Brief due date not until October 23, 2006, appellate counsel has yet to thoroughly review the entire contents of the record; indeed, not all the sentencing transcripts have been provided as of today's date.  And appellate counsel has yet to obtain the majority of the District Court pleadings, including a copy of the Plea Agreement.

Further, Mr. Barnes submits that notwithstanding the waiver of appeal provision in the Plea Agreement, he is entitled to explore for plain error

9

review District Court compliance with Rule 11 of the Federal Rules of Criminal Procedure, <u>United States v. Vonn</u>, 535 U.S. 55, 59 (2002), and to review for plain error any possible breaches of the Plea Agreement by the Government.  Should he thereby overcome the waiver of appeal in the Plea Agreement, then the issue of whether the record supports the Court's decision to exclude from the trial evidence of Mr. Barnes' religious beliefs could be pursued for review in the Ninth Circuit.  To explore this issue the entire transcript of the May 18, 2004 hearing is needed, including the sealed section – which sealed section appears to have resulted in Rev. Christie's decision not to testify on Mr. Barnes' behalf.

The sealed transcript from May 18, 2004 is needed because the Court's decision to grant the Government's motion in limine to exclude evidence at trial concerning religious beliefs eviscerated Mr. Barnes' ability to mount his defense theory – that defense being that he was exercising his religious beliefs.  Mr. Barnes sought to challenge the Government's motion by offering, in addition to his own testimony, the testimony of Rev. Christie. Rev. Christie's decision not to testify reduced Mr. Barnes' two-person witness list in half, thus affecting his ability to challenge the Government's motion.  It follows that the record concerning Rev. Christie's decision not to testify – ***after the record clearly showed his willingness to testify on Mr.***

10

*Barnes' behalf, including a written waiver of conflict-of-interest (TR 5/18/04, 6-10)* – is important to review.

Moreover, even if appellate counsel ultimately chooses to file in the Ninth Circuit an Opening Brief in the form of an Anders Brief, arguing that the appeal is frivolous and without arguable merit within the meaning of Anders v. California, 386 U.S. 728 (1967), appellate counsel would nonetheless be required to refer to anything in the record that might arguably support the appeal – including the above described issue.  Anders, 386 U.S. at 744.  Thus, appellate counsel must have review of the entire record. Further appellate counsel must file the entire record so that the Court can make its own independent review to determine whether counsel's frivolousness conclusion is correct.  McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429 (1988).

### B.    No Harm Will Come to Rev. Christie Should the Court Grant the Motion to Unseal.

Otherwise, Mr. Barnes submits that should this Court's grant his motion to unseal, such order will cause no harm to Rev. Christie.  While Mr. Barnes acknowledges Rev. Christie's right to privacy and confidentiality when conferring with his legal counsel, such private, confidential discussions did not occur on May 18, 2004, given the Court's participation

in the same. [See, TR 5/18/04, 23].  Otherwise, there is no issue as to

protecting the privacy and confidentiality of the witness, Rev. Christie, who

had already been clearly identified.  Ultimately he chose not to testify, and

thus created no possibility of self-incrimination.


**IV.    Conclusion.**

        For all these reasons and those set forth in the Declaration of Counsel,

Mr. Barnes respectfully asks that this court grant the motion to unseal.


DATED: Wailuku Maui Hawaii, August 25, 2006.


                        __/s/ Georgia K.McMillen_____

                        GEORGIA K. MCMILLEN
                        Attorney for Defendant-Appellant

                        Michael Trent Barnes